**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**George READUS, Defendant-Appellant.
No. 16725.**

United States Court of Appeals
Sixth Circuit.

Oct. 4, 1966.

Victor M. Javitch, Cleveland, Ohio, for appellant, Alvin L. Gray, Cleveland, Ohio, on brief.

---

Nathaniel R. Jones, Cleveland, Ohio, for appellee, Merle M. McCurdy, U. S. Atty., Nathaniel R. Jones, Asst. U. S. Atty., Cleveland, Ohio, on brief.

Before WEICK, Chief Judge, and EDWARDS and CELEBREZZE, Circuit Judges.

EDWARDS, Circuit Judge.

This is a direct appeal from a conviction for possessing and transporting 137 gallons of non-tax-paid whiskey. Appellant was tried before a jury in the United States District Court for the Northern District of Ohio, Eastern Division. He was found guilty of violating Title 26 U.S.C. §§ 5205(a) (2) and 5604(a) (1) (1964) and was sentenced to one year's imprisonment.

On January 3, 1962, federal agents of the Alcohol Tax Unit of the United States Treasury had a house at 5906 Griswold Avenue in Cleveland, Ohio, under surveillance. They had previously secured a federal search warrant for these premises. From the testimony of these agents, the jury could have found the following facts:

At about 7:30 p. m. appellant and two companions appeared at a house at 5906 Griswold. They were riding in a 1952 Pontiac. Appellant opened a metal gate that led to a driveway and a garage on the premises. Appellant then got back in the Pontiac and was seen directing the driver on a route that led them to a meeting at a restaurant parking lot with one Eaton Harwell and another man in the immediate vicinity of a 1957 Dodge automobile. Again the agents saw appellant gesturing as if giving directions.

Thereafter appellant and Harwell got into the 1952 Pontiac which preceded the 1957 Dodge back to 5906 Griswold Avenue, with appellant giving hand signals to the driver of the Dodge at turns. When they arrived at 5906 Griswold, appellant got out and motioned for the Dodge to enter the driveway. The Dodge backed into the driveway and parked there and appellant and a companion went into the house. After stay-

ing there five minutes, they returned to the Pontiac and drove away.

At this point agents went to the Dodge, flashed a light in the back seat, saw what appeared to them to be moonshine whiskey, and searched the Dodge and seized 137 gallons of non-tax-paid whiskey. They radioed for other officers to stop the 1952 Pontiac and arrest its occupants. This was done forthwith.

The only appellate questions presented to this court pertain to the sufficiency of the evidence to support a jury finding of possession or transportation. Appellant particularly asserts that the most that was established was appellant's presence where bootleg whiskey was found and association with persons found in possession thereof. In this regard he relies for reversal upon United States v. Paige, 324 F.2d 31 (C.A.4, 1963), and Clark v. United States, 293 F.2d 445 (C.A.5, 1961).

■ This court has recently reaffirmed the basic holdings of these two cases: that mere presence on the scene and association with illegal possessors were not enough to support convictions for possession or transportation. United States v. Webb, 359 F.2d 558 (C.A.6, 1966). See also United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965).

■ Here, however, there is much more evidence to support the "convoy" theory of the government (See Wise v. United States, 241 F.2d 545, 547 (C.A. 5, 1957)) than in United States v. Webb, supra. We believe there was evidence from which the jury might have found beyond a reasonable doubt that defendant exercised "dominion" over the illicit whiskey. United States v. Webb, supra. Defendant's preparations for and direction of the whiskey car could have been viewed by the jury as indicating both knowledge of its contents and control of it.

■ This does not, however, end our concern with this case. Part of the trial record which the jury considered concerned the events immediately following

defendant's arrest. One of the agents testified to the following colloquy all in the presence of appellant:

"And he, Harwell, said, 'They were out trying to find me a job. They came to the west side and picked me up.'

"I said, 'That is not quite right, because we have been following you all for quite some time.'

"Readus said, 'How long have you been following us?'

"I says, 'Since the point you met him up at the restaurant at Broadway and Pershing.'

"Then Harwell, after another question or two about where he was from, he said he was from Newport, Tennessee. I asked Harwell what the whiskey in the car was all about, and he said, 'Well,' he says, 'it looks like I have been boxed up in this, and I'm not going to take it.'

"And in the presence of Readus, he says, 'I brought the whiskey here,' he says, 'I don't know where we left it except down on that street, and we were on our way to George's to get the money, when George says you all were following us at 59th and Outhwaite.'

"Q  By 'George,' whom did he have reference to?

"A  George Readus.

"Q  What did George Readus say at this point?

"A  He did not say a word. I questioned him about it, and he said, 'I don't know a thing about it.' "

Harwell's statement as quoted, plainly was hearsay. It was made while both he and defendant were in custody. Harwell himself did not testify at defendant's trial. Nor was Harwell's statement admissible because made in the presence of the accused and assented to by him. We read the defendant's statement as a definite denial. Such hearsay is inadmissible in a criminal prosecution. Amezaga v. United States, 296 F. 915 (C.A.5, 1924); McCarthy v. United States, 25 F.2d 298 (C.A.6, 1928); Yep v. United States, 83 F.2d 41 (C.A.10, 1936); Poole v. United States, 97 F.2d 423 (C.A. 9, 1938); United States v. Dellaro, 99 F.2d 781 (C.A.2, 1938); Thompson v. United States, 227 F.2d 671 (C.A.5, 1955); 22A C.J.S. Criminal Law § 734 (2) (1961). See also 4 Wigmore, Evidence §§ 1071–72 (3d ed. 1940).

We note, of course, that there was no objection to this evidence at the trial. Nor is its admission cited to us in any appellate question. But in as close a case as this one is as to sufficiency of proofs of defendant's knowledge, the colloquy we have quoted may well have been decisive with the jury.

And we do not believe that in this criminal case it can be held admissible as hearsay which was not objected to. (See Annot. 79 A.L.R.2d 890 (1961)). In the transcript we find this very question posed by the foreman of the jury during the course of jury deliberations:

"THE COURT: Ladies and gentlemen of the jury, you have submitted a question to me, signed by H. B. Coe, the foreman, which reads as follows:

" 'Was the statement made by Kafoglis's that Harwell said they were going to George's house to get the money admissible as evidence?'

"Is that your question?

"THE FOREMAN: That's right.

"THE COURT: The answer to that question is yes. There was no objection to that testimony, and it was admitted. There should be absolutely no question in your mind concerning the admissibility of that evidence."

The fact that the foreman of the jury asked this question of the trial judge indicates to us rather clearly that the jury was troubled over what effect it should give to this hearsay evidence. The judge placed his stamp of approval on it, and it may have been the decisive point in influencing the jury in determining the issue of defendant's knowledge and control of the illicit whiskey. Under these circumstances, we feel constrained to hold that the admission of

this hearsay was error which prejudiced the result of the trial (McCarthy v. United States, supra), and which should be noticed by this Court under Rule 52 (b), Federal Rules of Criminal Procedure.

Defendant is entitled to a new trial without the admission of incriminating and inadmissible hearsay:

"[I]n a case where plain error has been committed affecting substantial rights of the accused in a criminal case an appellate court may take notice on its own motion of such error." Glenn v. United States, 271 F.2d 880, 883 (C.A.6, 1959),

United States v. Dunn, 299 F.2d 548 (C.A.6, 1962).

The conviction and sentence are vacated and the case is remanded to the District Court for further proceedings consistent with this opinion.