**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas HACKETT, Defendant-Appellant.**

**No. 305-70.**

United States Court of Appeals,
Tenth Circuit.

Jan. 18, 1971.

Rehearing Denied Feb. 24, 1971.

Jack L. Love, Albuquerque, N. M., for defendant-appellant.

Stephen L. ReVeal, Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., Albuquerque, N. M., on the brief) for plaintiff-appellee.

Before LEWIS, Chief Judge, and JOHNSEN* and HOLLOWAY, Circuit Judges.

LEWIS, Chief Judge.

Defendant was found guilty by a jury of a violation of the Dyer Act, 18 U.S.C. § 2312, the unlawful transportation of a stolen automobile. He appeals from the judgment of conviction and sentence contending that his trial was tainted by the admission of two statements, one a confession, given by him to an agent of the Federal Bureau of Investigation during a period of detention by New Mexico state police. The premise of this contention is the claim that the circumstances of his arrest, detention and interrogation show an impermissible working arrangement between federal and local officers. The contentions are without merit and we affirm.

On December 4, 1969, Officer Garcia observed defendant, accompanied by two passengers, driving an automobile bearing Wisconsin license plates at a point some six miles east of Gallup, New Mexico. Officer Garcia made a radio request for a message relay to the National Crime Information Center inquiring as to whether the automobile was listed as stolen; the response from the Center was negative. Nevertheless, Officer Garcia stopped the car for a routine registration check.

After being stopped, defendant using the alias of Harold Benoit, and having no registration paper, exhibited a rental

* Of the Eighth Circuit, sitting by designation.

contract showing the car to have been originally rented in Chicago November 25 to be returned November 26. Two obvious alterations to the contract were observed by the officer changing both time of return and geographical limitations upon use of the car. Garcia then asked defendant to sit in his patrol car while he requested his dispatch office to call the automobile rental agency in Chicago. The call was made and it was determined that the subject car was reported stolen in Chicago. Garcia then had one of the passengers drive the rental car and follow him to the New Mexico state police office, a short distance west of where defendant was stopped; defendant rode with Garcia. Before proceeding to the office, Garcia informed the radio operator he would like to meet F.B.I. Special Agent Walton at the office in regard to a possible Dyer Act violation. They left for the office at approximately 3:18 p. m.

Although the state officer gave defendant some cursory advice as to his rights, no questions were asked at the scene and defendant was not specifically told he was under arrest. He was informed that he would be questioned by the F.B.I. and would be cited for improper registration based on the altered rental contract.

After arrival at the state police station, Officer Garcia again called Chicago for the purpose of personally verifying the report that the subject car was stolen; he obtained the verification. Within minutes thereafter F.B.I. Agent Walton arrived at the station, gave defendant the *Miranda* warnings and obtained a written waiver or acknowledgment of those rights. Less than thirty-five minutes had elapsed since defendant had first been stopped on the highway until he signed the waiver at 3:35 p. m. During this interview defendant gave exculpatory statements only.

At approximately 5:00 p. m. Garcia called a state court magistrate, learned he had gone for the day and informed the magistrate's secretary he had a prisoner he would like to have arraigned "as soon as possible." After Garcia's call to the magistrate he was called out to investigate an accident and made no further effort to arraign defendant that day. Defendant was arraigned before a state magistrate the next morning, December 5. He was again interrogated by Agent Walton on December 6 after again executing a *Miranda* waiver. At this time defendant fully confessed to the Dyer Act violation.

Defendant's argument has two facets: First, that his state arrest was unlawful and his unlawful detention thereunder served only to allow a federal interrogation and, second, that if his arrest was lawful his arraignment before a state magistrate was unlawfully delayed to allow a federal interrogation. Both arguments develop from the basic rule that state and federal officers cannot corrupt statutory criminal procedures into an impermissible working arrangement in violation of basic rights. Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829. We must reject both arguments as falling within the compulsion of *Anderson*.

Officer Garcia most certainly had probable cause to believe defendant guilty of both faulty registration in violation of N.M.Stat.Ann. § 64–10–2 (1953) and of unlawful possession of a stolen vehicle in violation of N.M.Stat.Ann. § 64–9–5 (1953) and the arrest was thus valid. Nor could such an arrest be deemed a subterfuge for he was charged and arraigned for faulty registration, a bona fide attempt to have such arraignment being made within less than an hour and a half after citation. Such a delay was not unreasonable per se. *See* State v. Slicker, 79 N.M. 677, 448 P.2d 478.

As we have indicated, defendant was twice interrogated by the federal agent. The first interrogation was before state arraignment and was admittedly triggered by Officer Garcia's call to alert the federal agent to a possible Dyer Act violation. This act we do not consider impermissible and, in fact, had the state officer failed to have done so we would

**422**

ation. The second interrogation, occurring after arraignment, can only be attacked under a nebulous application of the "fruit of the poisonous tree" doctrine. Since the first interrogation produced nothing incriminatory it is doubtful that the doctrine could find any logical application.

It is possible, of course, that Officer Garcia could have expedited defendant's arraignment and thus prevented the first federal interrogation at that time. But it is the unreasonable delay in state process that allows federal officers to "get the goods" on an accused that is impermissible, Hayes v. United States, 10 Cir., 419 F.2d 1364, and not the failure of the state to take affirmative steps to delay federal interrogation. Federal interrogation prior to state arraignment is lawful. Cram v. United States, 10 Cir., 316 F.2d 542. The total circumstances shown in this case do not show an impermissible working arrangement between state and federal officers.

Affirmed.